MERCANTILE TRUST CO. *v.* PITTSBURGH & W. R. CO.

(*Circuit Court, W. D. Pennsylvania.* February 14, 1887.)

1. RAILROAD COMPANIES—MORTGAGE—RECEIVER—INTERVENTION.
   The appointment of receivers of a railroad company, pending statutory proceedings in another court against the company for the assessment of construction damages, does not interfere with the prosecution thereof, nor is the plaintiff therein bound to bring in the receivers. It is their business to intervene, and make defense, if they wish to do so.

2. SAME—JURISDICTION—COLLATERAL ATTACK.
   The jurisdiction of such court cannot be called in question collaterally, on the ground of a supposed mistake in holding the plaintiff's case to be within the statutory remedy.

3. SAME—PRIORITY OF CLAIMS—DAMAGES TO LOT-OWNERS.
   The claim of a lot-owner for damages, resulting from the construction and maintenance on the street in front of his lot of a railroad mounted on trestle-work, is paramount to the claims of the railroad company's mortgage creditors.

4. SAME—WAIVER—CONSTRUCTION OF ROAD IN STREET.
   The lot-owner does not waive his paramount right by allowing the railroad company to construct its railroad on the street without first making compensation or giving security according to the constitutional requirement.

In Equity.

*Sur* exceptions to master's report on petition of John A. Verner for an order on receivers of Pittsburgh & Western Railroad Company to pay judgment for damages from construction of railroad, obtained by him in the court of common pleas of Allegheny county, Pennsylvania.

*John S. Ferguson* and *James T. Buchanan*, for exceptions *ex parte* petitioner.

*Johns McCleave*, for exceptions *ex parte* receivers.

ACHESON, J. 1. The appointment by this court of the receivers did not oust the jurisdiction which the court of common pleas had previously acquired of the proceedings against the railroad company instituted by

the petitioner for the ascertainment of his damages, nor did it operate as a stay thereof. Neither was the petitioner bound to bring in the receivers as defendants, as he was seeking no relief against them. It was their business to intervene, and take defense, if they wished to do so. High, Rec. §§ 258–260; *Tracy* v. *First Nat. Bank*, 37 N. Y. 523. The master was therefore correct in his determination that the petitioner's rights as a judgment creditor are not to be denied recognition simply because he proceeded in the prosecution of his suit without making the receivers parties, or notice to them, and without leave of this court.

2. We concur with the master that it is not open to the receivers, or to the mortgage creditors, in a collateral way, to question the jurisdiction of the court of common pleas on the ground that the trestle-work built on the street in front of the petitioner's property, and by reason of the construction of which his damages arose, was not an "embankment," within the meaning of section 10 of the act of February 19, 1849, (Purd. 1423, pl. 47,) and therefore that the proceedings in the court of common pleas were unauthorized by that act. It was for the court of common pleas to determine whether the trestle-work was such an embankment. The conclusion of that court upon that question presumably was right; but, whether so or not, it is not impeachable collaterally. It may be added that, if the petitioner's case was not embraced by the act of 1849, then, under the ruling in *Pennsylvania R. Co.* v. *Duncan*, 111 Pa. St. 352, 5 Atl. Rep. 742, his damages were recoverable in a common-law action. The subject-matter of the claim being thus within the general jurisdiction of the court, it follows that, if any mistake was made, it was, at most, in the mere form of procedure. In any view, however, the tribunal for the rectification of the supposed error is the supreme court of Pennsylvania. Standing in full force, the judgment must be treated here as conclusive.

3. This brings us to the consideration of the question whether the petitioner's claim is of such a kind or nature as to be entitled to payment out of the funds in the hands of the receivers in preference to the claims of the mortgage creditors. The learned master held that it was not. From this conclusion we are constrained to dissent. It is true that no part of the petitioner's lot of ground was appropriated by the railroad company, and, in view of the decision in *Allegheny City* v. *Moorehead*, 80 Pa. St. 138, it may even be conceded that the petitioner had no title in the soil of Bank Lane, the street upon which the railroad was built. But the rule which absolved a corporation, acting under the right of eminent domain, from liability for consequential damages to private property, never had any foundation in natural justice, and has been abrogated by the fundamental law of Pennsylvania, which enjoins compensation to be made alike for the taking, injury, or destruction of private property. Const. 1874, § 8, art. 16; *Pusey* v. *Allegheny City*, 98 Pa. St. 522. If, then, the petitioner had no proprietary title in the soil of Bank Lane, he had an easement therein appurtenant to his abutting lot of ground, and, his property having been injured by the construction and maintenance of the trestle-work on the street, his

case undoubtedly is within all the provisions of the above-cited section of the constitution, which, after prescribing compensation, declares: "Which compensation shall be paid or secured before such taking, injury, or destruction." Thus, damages resulting from the injury or destruction of private property are put upon the same footing as damages sustained by a direct appropriation.    This is as it should be.

Now, in *Western Pennsylvania R. Co.* v. *Johnston*, 59 Pa. St. 290, it was held that a land-owner's claim for damages, arising from the taking of property, is paramount to a mortgage given by the railroad company before the damages were assessed and paid, or secured to be paid; and in *Lycoming Gas & Water Co.* v. *Moyer*, 99 Pa. St. 615, this principle was applied to a case of consequential damages, it being there decided that a mill-owner's claim for damages, resulting from a decrease in the flow of water in his mill-race, which the company caused by interfering with the run which supplied his mill, was a continuing lien, on the corporate property, extinguishable only by payment, or security for payment.    In the former of these cases it was distinctly ruled, also, that the claimant's paramount right was not lost or waived by allowing the corporation to construct its railroad without first making payment or giving security.

What superior equities have the mortgage bondholders here?    We perceive none.    It cannot be pretended that the petitioner, by word or act, misled them.    Moreover, inquiry whether the railroad company had discharged the claims for construction damages was a matter of common prudence.    If these creditors made no investigation, they have only themselves to blame.    In fine, the mortgagees, having no other or better title than that of the railroad company itself, can with no more justice maintain a railroad, mounted on trestle-work on the street in front of the petitioner's property, to his permanent injury, without making him compensation, than the corporation could.

The petitioner's exceptions to the master's conclusions of law must be sustained, and all other exceptions overruled.

Let a decree be drawn in accordance with this opinion.